# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. _____

JAMIE S. CLINGAN, on behalf of the
United States of America

      Plaintiff/Relator,

                                                  **FILED UNDER SEAL**
v.                                                  **JURY TRIAL DEMANDED**

GRACE HEALTHCARE, LLC

      Defendant.

## QUI TAM COMPLAINT

RELATOR JAMIE S. CLINGAN brings this qui tam action in the name of the United States of America, by and through her counsel Whitsitt & Gross, P.C., and hereby states and alleges as follows:

### SUMMARY INTRODUCTION

1.     This is an action by qui tam Relator Jamie S. Clingan ("Clingan"), on behalf of the United States of America, against Grace Healthcare, LLC ("Grace") to recover penalties and damages arising out of the presentation of false claims and false statements to Medicare and Medicaid.

### PARTIES

2.     Relator Jamie S. Clingan is a citizen of the United States of America and a resident of the State of Colorado.

1

3.   On information and belief, Defendant Grace Healthcare, LLC is a Delaware limited liability company registered to do business in Colorado as Glenwood Investments & Associates, LLC dba Grace Healthcare of Glenwood Springs (ID 20061369822). Its principal office is located in Tennessee. Grace maintains three health care facilities in the state of Colorado, which are located in Glenwood Springs, Rocky Ford and Paonia, Colorado.

## JURISDICTION AND VENUE

4.   This action arises under the False Claims Act, 31 U.S.C. §§ 3729 *et seq*.

5.   This Court has subject matter jurisdiction over this action pursuant to 31 U.S.C. § 3732(a) (False Claims Act) and 28 U.S.C. § 1331 (Federal Question).

6.   Venue is proper in this district pursuant to 31 U.S.C. § 3732(a) because Defendant Grace transacts business in this district and because the factual allegations giving rise to this action occurred, in part, in this district.

7.   This action is filed under seal pursuant to the requirements of 31 U.S.C. § 3730(b) and will remain under seal for a period of at least sixty days and will not be served on Defendant Grace until the Court so orders. Relator Clingan has served a copy of this Complaint upon the United States of America, together with a written disclosure statement setting forth and enclosing all material evidence and information she possesses, pursuant to the requirements of 31 U.S.C. § 3730(b)(2).

8.   Relator Clingan is the original source of, and has direct and independent

knowledge of, all publicly disclosed information on which any allegations herein might be deemed based, and has voluntarily provided such information to the government pursuant to 31 U.S.C. § 3730(e)(4)(B).

## FACTUAL ALLEGATIONS

9. In the fall of 2009, in response to a blind employment application Clingan submitted pursuant to a notice published in a local paper, Grace approached Clingan to inquire whether she would be interested in taking an employment position as the Business Office Manager for Grace with respect to its health care facility located in Glenwood Springs, Colorado.

10. At the time she was contacted by Grace, Clingan had acquired substantial knowledge and skills with respect to the billing and accounting procedures required pursuant to Medicare and Medicaid, which knowledge and skills were valuable for the execution of the position that was offered to her by Grace.

11. Clingan accepted the offer of employment extended by Grace and started work as their Business Office Manager on October 23, 2009, at a salary of $43,500.00 per year. Within three months of her initial employment, Clingan received a raise in her salary to $52,000.00 per year, based upon the high level of her performance.

12. A significant portion of Clingan's job responsibilities for Grace involved the submission of periodic statements for payment of medical services provided to Grace's patients pursuant to the provisions of the Medicare and Medicaid Acts. Said Acts provide for government payment of qualifying medical costs and expenses of covered persons and have extremely

detailed and specialized requirements for billing in order for the provider to be entitled to recovery of such costs. Among other things, it is required that the provider submit its initial bill for any services provided within a specified time period in order to be qualified to recover for those services. If a claim for payment is initially denied, rebilling for those services must be timely submitted within regulatory guidelines in order for that claim to remain valid and recoverable. A provider's failure to comply with these timely filing requirements results in a disqualification to recover for those services. In addition, with each statement submitted, the provider is required to submit a certification that all of the requirements have been met for it to recover for the fees and costs submitted, including a verification that the submission is timely made. The Medicare and Medicaid Acts are explicit that any false certification on a statement submitted for payment under those Acts may be the basis for prosecution of both the provider entity and the individual responsible for that submission and false certification. By virtue of her position as the person responsible for the billings of Grace to the federal and state governments pursuant to Medicare and Medicaid, Clingan was subject to considerable personal liability for any potentially false claims submitted under her name.

13.   In the course of her duties for Grace and in order to clean up a number of statements for services provided, which had accumulated in Clingan's office prior to her taking the Business Office Manager position, on January 20, 2010, Clingan submitted to her superiors a document entitled  "Authorization for Account Write-Off." In this document, Clingan had collected a number of statements for services provided by Grace for its patients, but which, for various reasons, had not been properly or timely billed, were no longer acceptable for payment under Medicaid timely filing requirements. Clingan therefore submitted them to her superiors for an

authorization to write these amounts off as unrecoverable. She did so in order to clear up a prior backlog in statements that had been in her office prior to the date of her initial employment.

14.     Clingan did not receive a direct response to the Authorization for Account Write-Off request from her superiors at Grace, however, she did discover that on February 2, 2010, another Grace employee had submitted a number of those same statements for payment under Medicaid. The manner of presenting claims under this system is electronically, by use of a login name and password to obtain access. Clingan had been provided a login and password by Grace in order for her to submit statements to Medicare and Medicaid and knew that several of Grace's Colorado employees utilized the same login and password for their own submissions. On information and belief, Clingan therefore assumed that the invoices in question were submitted under this same login and password, making it appear that they were submitted by Clingan.

15.     Clingan was aware at the time of potential criminal and civil penalties for both the organization and for the responsible person within the organization for the submission of false claims to the Medicaid program and was concerned that the filing of these statements for payment might result in possible criminal action against her personally. She expressed this concern to her supervisor and on February 4, 2010, provided in writing to superiors at Grace an analysis, along with citations to Medicaid regulations, as to why the claims were not recoverable under Medicaid regulations and were considered to be false or fraudulent. At that time Clingan asked for authority to void the remittances on these claims as they were made. That request was refused several times.

16.     Clingan was encouraged to ignore the invalidity of the claims in question and not to

raise any further questions. In response she stated to her supervisor that she would be forced to submit her resignation, in order to avoid potential prosecution for these fraudulent claims, unless the claims were withdrawn. On February 6, 2010, Clingan again contacted Cyndi Matheny, Director of Facility Accounting for Grace, and was told that Ms. Matheny had received Clingan's material but that the claims would not be voided or withdrawn. She was further aware of Clingan's concern that the claims were filed under her login and password, making Clingan personally responsible for those claims and said nothing about any alternate login for the filing of those claims.

17. Based upon management's absolute refusal to void, withdraw or refund the remittances on the false claims, Clingan submitted her written resignation to her supervisor on February 9, 2010, stating that she believed that she was compelled to do so to avoid potential personal prosecution for the filing of those claims by Grace. The resignation was accepted without comment and Clingan was instructed to leave the premises. Thereafter, she was paid thirty days' pay for her resignation notice period, but was not allowed back in the facility.

18. Over the course of Clingan's employment by Grace, she had numerous conversations with Linda Reeves, an employee of Grace in its financial department. Ms. Reeves requested that Clingan provide backup documentation for "Medicare Allowable Bad Debt" pursuant to the requirements of 42 C.F.R. §413.89 regarding charges that had previously been removed from Grace's books over the course of the prior year. Upon review of those debts, Clingan responded that most of those debts were not allowable under Medicare regulations. When pressed on this issue, Clingan provided Susan Coleman, Regional Field Controller for

6

Grace, with written documentation of the invalidity of these Medicare Allowable Bad Debts. Clingan was informed by Coleman that nevertheless, Grace had included these claims for recovery in Grace's Medicare Allowable Bad Debt in its cost report to the government. On information and belief, Clingan asserts that Grace has continued in its practice of including such non-valid debts in its Medicare Allowable Bad Debts recover claims to the federal government, despite actual knowledge by Grace employees of the invalidity of these claims. At other times, Grace employees asked Clingan to sign blank template statements which would result in the appearance of a statement sent to a Grace client in order to falsely establish compliance with Medicare billing requirements, which request Clingan refused, but which she asserts, on information and belief have been executed and filed by other Grace employees in order to recover false Medicare claims from the federal government.

## CLAIM FOR RELIEF
(Violation of the False Claims Act – 31 U.S.C. § 3729)

19. Each of the foregoing allegations in paragraphs 1 through 18 are incorporated herein by reference.

20. Defendant Grace knowingly presented, or caused to be presented, a false or fraudulent claim for payment or approval to Medicare and Medicaid in violation of 31 U.S.C. § 3729(a)(1)(A).

21. Defendant Grace's knowing submission of false claims resulted in payment from Medicare and Medicaid.

7

22. The United States Government and the public fisc have been damaged as a result of Defendant Grace's violation of the False Claims Act.

WHEREFORE, Relator Clingan, on behalf of herself and the United States Government, respectfully prays the Court enter the following relief:

(a) judgment against Defendant Grace in an amount equal to three times the amount of damages the United States of America has sustained as a result of Defendant Grace's violation of the False Claims Act, plus a civil penalty of $10,000.00 per false claim and the costs of this action pursuant to 31 U.S.C. § 3729(a)(1)(G);

(b) judgment in favor of Relator Clingan for recovery of all costs and expenses of this action, with interest, including attorneys' fees pursuant to 31 U.S.C. § 3730(d)(1);

(c) in the event the United States Government proceeds with this action, Relator Clingan shall be awarded an amount for bringing this action of at least 15% but not more than 25% of the proceeds of the action;

(d) in the event the United States Government does not proceed with this action, Relator Clingan shall be awarded an amount for bringing this action of at least 25% but not more than 30% of the proceeds of this action;

(e) Relator Clingan shall be awarded prejudgment interest;

(f) a trial by jury shall be held on all issues so triable; and

(g) an Order for such other and further relief as this Court deems just and proper.

Dated this 7th day of July, 2010

Respectfully submitted,

/s Timothy E. Whitsitt_____
Timothy E. Whitsitt, Atty. Reg. 05962
Whitsitt & Gross, P.C.
320 Main Street, Ste 200
Carbondale, CO  81623
Telephone: (970) 963-6363
Fax: (970) 963-6667
E-mail: whitsitt@roaringforklaw.com
Attorneys for Relator Jamie S. Clingan


/s Adrienne C. Rowberry_____
Adrienne C. Rowberry, Atty. Reg. 39547
Whitsitt & Gross, P.C.
320 Main Street, Ste 200
Carbondale, CO  81623
Telephone: (970) 963-6363
Fax: (970) 963-6667
E-mail: arowberry@roaringforklaw.com
Attorneys for Relator Jamie S. Clingan